UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** : | |
| : | |
| v. : | **Criminal No. 07-0122 (RWR)** |
| : | |
| **EDWARD CHUA,** : | |
| : | |
| **Defendant.** : | |

**GOVERNMENT'S MOTION FOR SECTION 5K1.1 DOWNWARD
DEPARTURE AND MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorneys, the United States Attorney for the District of Columbia and the Fraud Section of the Criminal Division, United States Department of Justice, hereby submits this motion for downward departure pursuant to U.S.S.G. section 5K1.1 and its memorandum in aid of sentencing. The Pre-Sentence Report (PSR) correctly calculates defendant Chua's offense level under the United States Sentencing Guidelines (USSG) at offense level 26. For the reasons described below, the United States submits that the defendant's substantial assistance to law enforcement in this investigation merits a four level downward departure, resulting in a USSG offense level of 22. Based on an offense level of 22 and Criminal History Category II, the government recommends concurrent sentences of 46 months' incarceration on each of the two counts, a concurrent three year period of supervised release on each of the two counts, and restitution in the amount of $10,743,487.

## FACTUAL BACKGROUND

Between November 1999 and January 2005, defendant Chua was the owner of EMMCCO and ECCO, which were exporting companies in the business of purchasing United States goods on behalf of clients in the Philippines and shipping those goods overseas. During that same period, the defendant acted as a purported "exporter" in approximately $10 million worth of fraudulent loan transactions, falsified documents sent to United States banks and to the Export-Import Bank of the United States ("Ex-Im Bank"), and misappropriated approximately $10 million in loan proceeds.

In the course of the conspiracy, the defendant would prepare false commercial invoices, packing lists, bills of lading, and Ex-Im Bank Supplier's Certificates (collectively "shipping documents") documenting the amount and value of United States goods he claimed to ship to the Philippines. Those false documents were sent to the lending banks and the Ex-Im Bank. The Ex-Im Bank is an independent agency of the executive branch of the United States and is also the official export credit agency of the United States. The Ex-Im Bank issues loan guarantees to United States banks on behalf of creditworthy foreign companies for the purpose of purchasing United States goods. Once the Ex-Im Bank issues a loan guarantee, if the foreign borrower defaults on its loan repayments to a United States bank, the Ex-Im Bank pays the amount of the outstanding loan to the United States bank.

After preparing the false shipping documents, the defendant would then prepare real shipping documents describing the true value of the United States goods he actually purchased and shipped to the Philippines. The actual value of United States goods the defendant purchased and shipped to the Philippines was significantly below the amount claimed in the false documents sent to the lending banks and the Ex-Im Bank. Once the lending banks made the loan payments to the

defendant, which were intended to reimburse him for the United States goods he had already purchased and shipped, the defendant kept a portion of the loan proceeds. As a result of this fraud, the defendant personally realized approximately $300,000 in profits.

The defendant sent the vast majority of the proceeds to foreign bank accounts, as directed by Marilyn Ong ("M. Ong"), who is a loan broker based in Manila, Philippines.[1] Between November 1999 and January 2005, M. Ong brokered the $10 million in loans for which the defendant acted as exporter. As a loan broker, M. Ong identified purported borrowers in the Philippines and lending banks in the United States and then assisted borrowers in executing loan agreements with the banks and the Ex-Im Bank. Once the loans were finalized, M. Ong instructed the defendant to prepare false loan documents, submit the false loan documents to the lending banks and to the Ex-Im Bank, and then misappropriate the loan proceeds.

Relying on information provided by M. Ong and the defendant, the Ex-Im Bank provided lending banks with loan guarantees, promising that the Ex-Im Bank would reimburse the lending banks for any losses incurred in the fraudulent loan transactions. As a result of defaults affiliated with the fraudulent M. Ong and Chua loan transactions, the Ex-Im Bank has paid approximately $10.7 million in claims to the lending banks.

---

[1] M. Ong and co-conspirator Ildefonso Ong, Jr. ("I. Ong") were indicted by a grand jury on October 4, 2007, in a nineteen count Indictment charging one count of conspiracy to defraud the United States and to commit offenses against the United States, in violation of 18 U.S.C. § 371, four counts of false statements, in violation of 18 U.S.C. § 1001, four counts of mail fraud, in violation of 18 U.S.C. § 1341, eight counts of money laundering, in violation of 18 U.S.C. § 1957, and one count of obstructing a proceeding before a department and agency of the United States, in violation of 18 U.S.C. § 1505. *See United States v. Marilyn G. Ong and Ildefonso Ong, Jr.*, Cr. 07-0260 (RWR). M. Ong and I. Ong remain at large as fugitives.

When confronted by law enforcement agents about his role in this scheme, the defendant accepted responsibility for his actions and entered a pre-indictment plea to conspiracy to defraud the United States and mail fraud. During the plea colloquy on July 13, 2007, the defendant admitted that between November 1999 and January 2005, he knowingly conspired with M. Ong to defraud the Ex-Im Bank and that he used a commercial interstate carrier in furtherance of that fraud.

## ARGUMENT

The government moves for a four level downward departure under USSG § 5K1.1. Defendant Chua provided substantial assistance to the government during its investigation and prosecution of co-conspirators Marilyn Ong and Ildefonso Ong, including:

(1) Chua agreed to cooperate at an early stage of the investigation and provided critical information to investigators about the "inner workings" of the scheme to defraud the Ex-Im Bank. Chua met with law enforcement agents on several occasions and provided them with information about his role in the fraud, as well as the role of M. Ong and I. Ong. Chua's information assisted the government in obtaining an indictment against M. Ong and I. Ong.; and

(2) Chua contacted friends and relatives in an attempt to assist the government in locating M. Ong and I. Ong (M. Ong lives in the Philippines and I. Ong fled the United States to the Philippines during the investigation).

When weighing what sentence is reasonable and appropriate in defendant Chua's case, several factors merit consideration. First, Marilyn Ong – not Edward Chua – was the mastermind of this scheme. M. Ong identified borrowers in the Philippines, matched the borrowers up with lenders in the United States, and facilitated the Ex-Im Bank guarantees. M. Ong is also the person responsible for recruiting the defendant into the scheme and explaining how the defendant should make it appear he was shipping goods that he was not actually shipping.

Second, once the fraudulent loan transactions were completed, M. Ong realized the vast majority of the fraudulent proceeds. During the life of the five year conspiracy, Chua personally made approximately $300,000 in profits and sent approximately $9 million of the loan proceeds to bank accounts owned and controlled by M. Ong, I. Ong, and others.

Third, Chua's cooperation was integral to the prosecution of co-defendants M. Ong and I. Ong, who are living outside of the United States. In international investigations, it is often time consuming and difficult to build a case against defendants living overseas, due to difficulties in obtaining documents and testimony from individuals and entities outside of the country. Chua's willingness to confess to the crime when confronted by law enforcement, explain conversations he had with M. Ong and I. Ong in furtherance of the fraud, and explain his understanding about the Philippine side of the fraud allowed the government to investigate and charge the case quickly and efficiently.

None of this is to minimize the severity of defendant Chua's conduct in this case, but rather to keep his conduct and cooperation in the proper perspective. Chua is currently at an offense level 26. Assuming Chua falls within Criminal History Category II (which the PSR recommends), a four level downward departure would bring Chua's offense level to 22, which provides for a Guidelines range of 46-57 months in prison. This is a reasonable sentencing range under the circumstances here, particularly in the context of the Court's prior sentences of other similarly situated defendants:

- Robert Delgado was sentenced to 24 months incarceration by this Court on October 5, 2007. *See United States v. Robert Delgado*, Cr. 06-0313 (RWR). Delgado, who had not provided substantial assistance to the government at the time of his

sentencing, was part of a $2.1 million scheme to defraud the Ex-Im Bank and personally received $100,000 of the scheme's proceeds.

- David Villongco was sentenced to 33 months incarceration by this Court on February 29, 2007. *See United States v. David Villongco*, Cr. 07-00009 (RWR). Like Chua, Villongco had provided substantial assistance to the government at the time of his sentencing and the Court granted the government's motion for downward departure based on his substantial assistance. Villongco engaged in a $20 million scheme to defraud the Ex-Im Bank and personally received approximately $150,000 of the scheme's proceeds.

- Daniel Curran was sentenced to 41 months incarceration by this Court on April 23, 2008. *See United States v. Daniel Curran*, Cr. 07-00057 (RWR). Curran also provided substantial assistance to the government at the time of his sentencing and the Court granted the government's motion for downward departure based on his substantial assistance. Curran engaged in a $30 million scheme to defraud the Ex-Im Bank and personally received approximately $400,000 of the scheme's proceeds.

In addition to these similarly situated defendants, the Court sentenced Jaime Galvez to 12 months incarceration on December 20, 2007. *See United States v. Jaime Galvez*, Cr. 07-00224 (RWR). Galvez was a freight forwarder who made purported shipments for several of the Curran and Chua loan transactions. Galvez admitted to lying in testimony he provided to a grand jury and to knowingly destroying records responsive to a grand jury subpoena. Galvez was charged with and plead guilty to one count of destroying and concealing records in a federal investigation and one

count of perjury. Based on Galvez's conduct and the charges to which he plead guilty, he is not a similarly situated defendant for purposes of this sentencing.

## SENTENCING FACTORS

Title 18, United States Code, Section 3553(a), provides numerous factors that the Court shall consider in sentencing Mr. Chua. These factors are discussed below as they are in Section 3553(a).

**(1) The nature and circumstances of the offense and the history and characteristics of the defendant**

**(A) Nature of the offense**

The maximum statutory terms of imprisonment at issue here reflect the serious nature of the crimes committed by the defendant. Conspiracy to defraud the United States carries a maximum statutory term of 5 years imprisonment and is a Class C felony. *See* 18 U.S.C. § 371. Mail fraud carries a maximum statutory term of 30 years imprisonment and is a Class B felony. *See* 18 U.S.C. §§ 1341, 3559.

**(B) Circumstances of the offense**

Chua's fraudulent conduct was persistent, pervasive and profitable. His fraudulent conduct spanned a period of more than five years. During those years, the entire purpose of EMMCCO and ECCO appears to have been designed to defraud United States lending banks and the Ex-Im Bank (and, by extension, American taxpayers) out of at least $10 million through the phony shipping documents. The only persons to benefit from the fraud were Chua and his co-conspirators.

This case illustrates how a government program intended to benefit United States businesses, by increasing United States exports to companies overseas, can be exploited by a United States citizen looking to make easy, and undeserved, money. In administering its insurance and guarantee

programs, the Ex-Im Bank relies on United States-based exporters to provide truthful information about the legitimacy of the transactions in which they engage. Because the Ex-Im Bank provides insurance products and guarantees to borrowers in foreign countries, and often borrowers in developing nations, it relies on United States exporters to certify that loan proceeds will be used to reimburse the exporters for United States goods that were actually purchased and shipped to the borrowers. Without this certification, which is contained in the Ex-Im Bank Supplier's Certificate, that transaction cannot be completed.

Chua abused this trust by intentionally making false statements on Ex-Im Bank Supplier's Certificates and on related documents that he prepared for the sole purpose of misappropriating the loan proceeds. Instead of purchasing approximately $10 million worth of United States goods and shipping them to borrowers in the Philippines, as he had represented that he had and would, Chua pocketed $300,000 and transferred approximately $9 million to bank accounts owned or controlled by co-conspirators. Chua's fellow citizens - the American taxpayers - have been left to pick up the enormous tab that resulted from his fraudulent conduct.

**(C)    The history and characteristics of the defendant**

The defendant was born and raised in Manila, Philippines. Chua moved to the United States in 1986, married Mary Sy, and had one child. Chua and Sy divorced in 1999 and Chua married Evelyn Cuenco in 2002. Chua and Cuenco divorced in 2003 and Chua married Marivic Chua in 2007 and had a second child. Chua also has four brothers and one sister. His aunt is Marilyn Ong, who was indicted by a grand jury on October 4, 2007, for her alleged role in a $40 million scheme to defraud the Ex-Im Bank. *See* FN 1, above. Chua describes his relationship with his family as good.

Chua is a high school graduate and attended two years of college. From 1997 through 2000, Chua was a full-time deliveryman for Jet Delivery. It appears that from 2000 through 2005, the defendant's livelihood was funded primarily - if not exclusively - from the proceeds of the Ex-Im Bank fraud. Additionally, on April 9, 2003, Chua was sentenced to 36 months summary probation, a $1,249 fine, and 20 days of community service for driving under the influence. Because the defendant committed the Ex-Im Bank offenses while he was under supervision for the DUI charge, Chua was assessed a Criminal History Category II.

**(2)    The need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the office; (B) to afford adequate deterrence; (C) to protect the public from further crimes of the defendant; and (D) to provide defendant with appropriate education or vocational training.**

As the world's commercial activity becomes increasingly inter-connected and sophisticated fraud schemes targeting the United States extend beyond the borders of the United States, it is important for the Court to impose sentences on the United States-based conspirators, without whom the fraud could not occur, that adequately deter future crimes. Although Mr. Chua does not appear to have orchestrated this crime, he was a willing participant for more than four years and engaged in approximately 13 fraudulent loan transactions. As the U.S. based "exporter," he was also an essential figure in its execution. Without him, the crime could not have succeeded.

As the Court is also aware, this is one of several related cases that involve schemes to defraud the Ex-Im Bank. It appears that the type of scheme the defendant engaged in is becoming all too common. As with all newly budding crimes, it is important for the Court to illustrate that these new crimes will not be tolerated and that the perpetrators of such crimes will be severely punished for their actions.

The government recognizes, however, that the significance of Mr. Chua's crime and the need to deter future crime should be counterbalanced with the defendant's timely acceptance of responsibility when confronted by law enforcement agents and the fact that he only kept $300,000 in profits from a $10 million crime. Although the government does not believe the size of Chua's personal profit mitigates his responsibility for the full $10 million crime, it does believe that this is a factor that may be considered along with Chua's timely acceptance of responsibility, in fashioning an appropriate sentence within the Guidelines.

As to the final consideration, it appears that the defendant may be a good candidate for further education or vocational training, as may be available to him through the Bureau of Prisons. The defendant has a high school degree, but apparently elected to pursue a small business opportunity, rather than continue his college education. *See* PSR at ¶ 58. In addition, although fluent in three languages, *id.* at ¶ 59, the defendant's legitimate employment over the past several years has been as a deliveryman. *Id.* at ¶¶ 61-70. As a result, there may be educational opportunities or vocational training available to him through the Bureau of Prisons that may assist the defendant in living a lawful and productive life following his release from any period of incarceration.

 **(3) The kinds of sentences available**

The maximum term of imprisonment for conspiracy to defraud the United States is five years, with a term of supervised release of not more than 3 years. The maximum term of imprisonment for mail fraud is 30 years, with a term of supervised release of not more than five years.

**(4)    The sentencing range established by the USSG**

The government and the defendant stipulated in the plea agreement to an adjusted offense level of 26. With a Criminal History Category II, which the PSR has recommended, the USSG recommends a sentence of 70-87 months. As stated above, the government recommends a four-level downward departure under USSG § 5K1.1 based on the defendant's substantial assistance, for an adjusted total offense level of 22. The resulting USSG range recommend by the government and the PSR is, therefore, 46-57 months.

In the plea agreement, the parties stipulated that the applicable fine range for both counts one and two was $1,250,000 or twice the pecuniary gain or loss. Based on Mr. Chua's financial condition, the government is not recommending a fine.

**(5)    Any pertinent policy statement issued by the USSC**

The government is unaware of any pertinent policy statements issued by the USSC.

**(6)    The need to avoid unwarranted sentencing disparities among defendants with similar records**

A guidelines sentence would help prevent such disparities between the defendant and similar defendants.

**(7)    The need to provide restitution**

The Court should find that defendant Chua is responsible, jointly and severally with defendants M. Ong and I. Ong, for the entire loss affiliated with the fraudulent loan transactions, which amounts to $10,743,487.

**CONCLUSION**

For the foregoing reasons, the government respectfully moves for a four-level downward departure under U.S.S.G. § 5K1.1, with a resulting adjusted offense level of 22 and Guidelines range of 46-57 months. The government recommends concurrent sentences of 46 months' incarceration on each of the two counts, a concurrent three-year period of supervised release on each of the two counts, and restitution in the amount of $10,743,487.

        Respectfully submitted,

        JEFFREY A. TAYLOR
        United States Attorney
        In and For the District of Columbia

By:    /S/ Michael K. Atkinson
        MICHAEL K. ATKINSON
        D.C. Bar # 430517
        Assistant United States Attorney
        Fraud and Public Corruption Section
        555 4th Street, N.W.
        Washington, D.C. 20530
        (202) 616-3702
        Michael.Atkinson2@usdoj.gov

        STEVEN A. TYRRELL
        Chief, Fraud Section
        Criminal Division
        United States Department of Justice

By:    /S/ Hank Bond Walther
        HANK BOND WALTHER
        D.C. Bar # 477218
        Trial Attorney
        Fraud Section, Criminal Division
        United States Department of Justice
        1400 New York Avenue, NW
        Washington, D.C. 20005
        (202) 257-6176

Dated: May 6, 2008